**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 24-1487**

---

ALYSE SANCHEZ; ELMER ONAN SANCHEZ HERNANDEZ; AMIRA ABBAS ABDALLA; JEAN CLAUDE EYEGHE-NANA; THERESA RODRIGUEZ PENA; MISAEL RODRIGUEZ PENA; OLIVIA ALDANA MARTINEZ; JOSE CARLOS ALDANA MARTINEZ; TATYANA MURITHI; MWITI MURITHI; BIBIANA NDULA; ERIC NDULA,

        Plaintiffs – Appellees,

  v.

MARKWAYNE MULLIN, Secretary, Department of Homeland Security; CALEB VITELLO, Acting Director, Immigration & Customs Enforcement; MATTHEW ELLISTON, Director, Maryland Field Office of ICE Enforcement & Removal Operations,

        Defendants – Appellants.

------------------------------

IMMIGRATION REFORM LAW INSTITUTE,

        Amicus Supporting Appellants.

---

**No. 24-6520**

---

WANRONG LIN; HUI FANG DONG,

        Petitioners – Appellees,

  v.

MARKWAYNE MULLIN, Secretary, Department of Homeland Security; CALEB VITELLO, Acting Director, Immigration & Customs Enforcement; MATTHEW ELLISTON, Director, Maryland Field Office of ICE Enforcement & Removal Operations; CHRISTOPHER KLEIN, Superintendent, Anne Arundel County Detention Facilities,

Respondents – Appellants.

------------------------------

IMMIGRATION REFORM LAW INSTITUTE,

Amicus Supporting Appellants.

Appeals from the United States District Court for the District of Maryland, at Greenbelt. George L. Russell, III, Chief District Judge.  (8:19-cv-01728-GLR; 8:18-cv-03548-GLR)

Argued:  January 29, 2026                                    Decided:  August 14, 2026

Before NIEMEYER, KING, and HARRIS, Circuit Judges.

Vacated and remanded by published opinion.  Judge Harris wrote the opinion, in which Judge Niemeyer and Judge King joined.

**ARGUED:**  Mary Lynn Larakers, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellants.  Michael Abrams, ACLU OF MARYLAND, Baltimore, Maryland, for Appellees.  **ON BRIEF:**  Brian M. Boynton, Principal Deputy Assistant Attorney General, Elianis N. Perez, Assistant Director, Matthew P. Seamon, Senior Litigation Counsel, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellants.  Nathaniel S. Berry, VENABLE LLP, Baltimore, Maryland; David Rocah, AMERICAN CIVIL LIBERTIES UNION OF MARYLAND FOUNDATION, Baltimore, Maryland; Daniel A. Galindo, Immigrants' Rights Project, AMERICAN CIVIL LIBERTIES UNION FOUNDATION, New York, New York, for Appellees.  Matt Crapo, Gabriel Canaan, IMMIGRATION REFORM LAW INSTITUTE, Washington, D.C., for Amicus Curiae.

2

PAMELA HARRIS, Circuit Judge:

The plaintiffs in this case, noncitizens eligible for provisional unlawful presence waivers under 8 C.F.R. § 212.7(e), allege that the government lacks legal authority to remove them from the country while their applications for such waivers are pending. The district court agreed, awarding summary judgment for the plaintiffs and enjoining the government from arresting or removing them until the provisional waiver process is completed. For the reasons that follow, we conclude that the plaintiffs are not entitled to summary judgment on the current record, and we therefore vacate the district court's judgment and remand for further proceedings consistent with this opinion.

## I.

### A.

The plaintiffs in this case are seven married couples, each including one United States citizen and one noncitizen who is unlawfully present in the country and subject to a final removal order. Each noncitizen plaintiff sought a particular immigration benefit: a provisional unlawful presence waiver, 8 C.F.R. § 212.7(e), a discretionary waiver that allows eligible individuals to facilitate the process of seeking legal status. The waivers, issued by U.S. Citizenship and Immigration Services ("USCIS"), operate as one part of a broader statutory and regulatory framework, which we summarize here for context.

Under the Immigration and Nationality Act ("INA"), noncitizens who are married to United States citizens – like the plaintiffs here – may apply for lawful permanent resident status, commonly known as a "green card." *Lovo v. Miller*, 107 F.4th 199, 202 (4th Cir.

3

2024).  The first step in that process is the filing of a petition known as Form I-130, which proves the requisite familial relationship between the citizen petitioner and the noncitizen beneficiary.  *Id.*  USCIS often requires both spouses to attend an interview before ruling on their I-130 petition.

For noncitizens unlawfully present in the United States, the second step is more difficult:  They must leave the country and obtain immigrant visas before requesting adjustment of status.  *Id.*  What makes this so challenging is that under the INA, their departure from the United States renders them inadmissible for up to ten years, leaving them to wait out that period in a foreign country separated from their United States-citizen spouses and families.  8 U.S.C. § 1182(a)(9)(B)(i).  To address this problem, the INA allows for a waiver of the ten-year admissibility bar if a noncitizen can show that it would impose "extreme hardship" to their citizen spouse.  *Id.* § 1182(a)(9)(B)(v).[1]

Before 2013, however, noncitizens could apply for this waiver only from abroad and were required by regulation to remain outside the United States until USCIS ruled on their waiver applications, which often took "well over one year."  *Provisional Unlawful Presence Waivers of Inadmissibility for Certain Immediate Relatives* ("2013 Rule"), 78 Fed. Reg. 536, 536 (Jan. 3, 2013) (codified at 8 C.F.R. § 212.7(e)).  So noncitizens still experienced lengthy separations from their citizen family members.  *Id.* at 565.  And

---

[1] As drafted, the statute assigns the authority to grant these discretionary waivers to the Attorney General.  But Congress has since transferred authority for enforcement of immigration laws to the Secretary of Homeland Security, who now implements this waiver process through USCIS.  *See Lovo*, 107 F.4th at 203 n.2 (citing Homeland Security Act of 2002, Pub. L. No. 107-296, § 402, 116 Stat. 2135, 2178 (2002)); 8 C.F.R. § 212.7(e)(1).

because waivers were approved at the "sole discretion" of USCIS, 8 U.S.C. § 1182(a)(9)(B)(v), they also faced significant uncertainty and risk; if they departed the United States to pursue green cards, there was no guarantee that their waiver applications would be approved, sparing them from the ten-year bar on admissibility.

That brings us to the "provisional unlawful presence waivers" at issue in this case. Recognizing that its prior regulatory regime had deterred eligible noncitizens from seeking legal status, USCIS promulgated a new regulation in 2013, allowing noncitizens to apply for and obtain waivers *before* leaving the United States, thus reducing the period of family separation and providing increased certainty. 2013 Rule, 78 Fed. Reg. at 536, 565–66. An "extreme hardship" showing was still required, and USCIS still retained discretion to grant or deny waivers on a case-by-case basis. 8 C.F.R. § 212.7(e)(2)(i), (e)(3)(vii) (2014). But noncitizens were now permitted – indeed, required – to seek these provisional waivers while still in the United States. *See id.* § 212.7(e)(3)(i) (requiring that noncitizens be "present in the United States at the time of filing the application for a provisional unlawful presence waiver").

In 2016, USCIS amended the 2013 Rule to extend eligibility for provisional waivers to noncitizens subject to final orders of removal. Those individuals were not eligible to apply under the 2013 Rule. But under the 2016 Rule, they could seek such waivers – provided they had already applied for and received USCIS's permission to reapply for admission into the United States, by way of Form I-212. *Expansion of Provisional Unlawful Presence Waivers of Inadmissibility* ("2016 Rule"), 81 Fed. Reg. 50244, 50244–45, 50255–56 (July 29, 2016); *see* 8 C.F.R. § 212.7(e)(4)(iv) (2017) (setting out new

eligibility criteria); *see also* 8 U.S.C. § 1182(a)(9)(A)(iii) (providing that § 1182(a)(9)(A)'s admissibility bar does not apply to noncitizens with final removal orders if the Secretary "has consented to the [noncitizen's] reapplying for admission").

So for the noncitizen plaintiffs in our case, the process to secure provisional unlawful presence waivers looks like this: They file and obtain approval of Form I-130, establishing the relationship with their United States-citizen spouses that qualifies them for lawful permanent resident status. Because they are subject to final removal orders, they also file and obtain approval of Form I-212, granting consent to reapply for admission into the United States. And *then* they may file, from within the United States, a provisional waiver application, or Form I-601A, which, if approved, means that they may depart the country to seek adjustment of status without risking a long period of inadmissibility. *See* 2016 Rule, 81 Fed. Reg. at 50255–56, 50259. The plaintiffs refer to these steps collectively as the "provisional waiver process," and we, like the district court, adopt that framing, treating the I-130 petition and the accompanying interview as the first of three steps in pursuing a provisional waiver. *See Sanchez v. McAleenan*, 2024 WL 1256264, at *2 (D. Md. Mar. 25, 2024).

**B.**

1.

Because these consolidated cases were decided without any discovery, we have only a handful of basic factual allegations before us. As noted above, the plaintiffs in this case are married couples comprised of one United States citizen and one noncitizen who lacks legal status and is subject to a final order of removal. All of the noncitizen plaintiffs are

seeking lawful permanent resident status and intend, as part of that process, to apply for provisional unlawful presence waivers.

The relevant events occurred several years ago, from 2016 to 2018, when the plaintiffs took the first step toward obtaining provisional waivers by filing I-130 petitions with USCIS. USCIS scheduled interviews with each couple at the agency's field office in Baltimore, Maryland. Three of the noncitizen plaintiffs attended the interviews with their spouses and were arrested and detained by U.S. Immigration and Customs Enforcement ("ICE") immediately thereafter, at the USCIS facility. The remaining noncitizen plaintiffs, having heard of these arrests, postponed or abandoned their interviews, fearing that they, too, would be taken into custody and potentially removed from the country.

The government does not dispute these basic allegations. As for its view of how and why these events unfolded as they did, it has said only – in response to the plaintiffs' complaint, as discussed below – that "ICE has a practice of arresting, detaining, and seeking removal of [noncitizens] with final orders of removal at USCIS offices on a case-by-case basis." J.A. 72.

2.

The plaintiffs filed suit in the District of Maryland, alleging that the government's detention and threatened removal of noncitizens during the provisional waiver process – and specifically, at the USCIS facility after their I-130 interviews – violated the INA and its implementing regulations, the Administrative Procedure Act ("APA"), and the Fifth

Amendment's Due Process Clause.[2]  These claims rested on what appeared to be two different legal theories, though the theories overlapped and were not always clearly delineated.

First, the plaintiffs alleged that the government lacked authority to detain or remove them while they were in the process of seeking provisional waivers.  The whole point of the statutory and regulatory provisions outlined above, the plaintiffs argued, was to allow eligible noncitizens with United States-citizen spouses to adjust their status primarily from *within* the United States, so that spouses and families could stay together during that process.  If the plaintiffs could be detained or removed despite the fact that they were pursuing provisional waivers, they contended, the provisional waiver program would be rendered effectively meaningless, and they would be denied their right to remain in the United States while seeking waivers of inadmissibility through that program.  On this theory, initiating the provisional waiver process protected applicants from detention and removal until the process had concluded, temporarily limiting immigration officials' ordinary discretion to execute removal orders.

The plaintiffs also raised a second set of allegations, claiming that the government exceeded its authority by targeting them for removal because they sought to avail themselves of the provisional waiver process.  On the plaintiffs' account, the government was using the provisional waiver program, with its promise of family unity and increased

---

[2] The plaintiffs also asserted a claim under the Suspension Clause, U.S. Const. art. I, § 9, cl. 2, but they did not move for summary judgment on that claim, and they have not raised it on appeal.  The district court treated the claim as "dropped," *Sanchez*, 2024 WL 1256264, at *2 & n.4, and we do the same.

certainty, to "lure" noncitizens to USCIS facilities for arrest, a "bait-and-switch" that rendered the provisional waiver program a "nullity." J.A. 20. On this theory, in other words, the problem was not that the government was threatening the plaintiffs with detention and removal *despite* their pursuit of provisional waivers; it was that the government was targeting them for detention and removal *because* they were seeking provisional waivers.

Soon after filing their complaint, the plaintiffs moved for a preliminary injunction prohibiting the government from arresting, detaining, or removing the noncitizen plaintiffs while the litigation proceeded, and ordering the government to release all noncitizen plaintiffs from federal custody. The district court denied a government motion to dismiss the plaintiffs' complaint, granted the plaintiffs' motion, and issued the preliminary injunction.[3] The government then filed its answer, in which it admitted, as noted above, that "ICE has a practice of arresting, detaining, and seeking removal of [noncitizens] with final orders of removal at USCIS offices on a case-by-case basis." J.A. 72. A few months later, the district court certified a class: citizens and their noncitizen spouses with final removal orders who were the beneficiaries of pending or approved I-130 petitions, eligible

---

[3] *See* Order, *Lin v. Nielsen*, No. 8:18-cv-03548-GLR (D. Md. May 2, 2019), ECF No. 27, J.A. 386 (granting preliminary injunction); Order, *Sanchez v. McAleenan*, No. 8:19-cv-01728-GLR (D. Md. Feb. 7, 2020), ECF No. 29, J.A. 63 (granting preliminary injunction and denying government's motion to dismiss); Order, *Lin v. Nielsen*, No. 8:18-cv-03548-GLR (D. Md. June 18, 2020), ECF No. 51 (consolidating cases). The government initially appealed the orders granting a preliminary injunction, but later moved to voluntarily dismiss those appeals pursuant to Federal Rule of Appellate Procedure 42(b).

for provisional unlawful presence waivers, and within the jurisdiction of the Baltimore USCIS field office.

3.

That brings us, finally, to the decision at issue in this appeal. In 2021, the government moved for summary judgment, and when settlement discussions proved unsuccessful, the plaintiffs cross-moved for summary judgment. Importantly, because the parties agreed that the case involved undisputed facts and presented purely legal issues, no fact discovery was conducted.

In 2024, the district court entered summary judgment for the plaintiffs. *Sanchez*, 2024 WL 1256264. At the threshold, the court rejected the government's contention that the INA barred judicial review of the plaintiffs' claims. *Id.* at *5–6. Relevant here, the court held that 8 U.S.C. § 1252(g), which precludes judicial review of "any cause or claim . . . arising from the decision or action by the [government] to . . . execute removal orders," did not apply. That was so, the court reasoned, because the plaintiffs did not challenge the government's ultimate right to remove them as a matter of discretion, but only the government's legal authority to do so during "the provisional waiver process provided for in [the government's] own regulations." *Id.* at *6.

Turning to the merits, the district court agreed with the plaintiffs' primary assertion: that the government lacked authority to remove noncitizens while they were in the process of seeking provisional waivers. As the court read the 2016 Rule, it was "intended to protect immigrants in the process of pursuing provisional waivers from detention and removal," thus limiting what otherwise would be the authority of immigration officials to remove

10

noncitizens with final removal orders. *Id.* at *12. The government thus violated its own regulations by arresting the plaintiffs before they could complete the provisional waiver process. *Id.* at *13. And it also violated the APA: By preventing noncitizens from completing the provisional waiver process, the court explained, the government "depart[ed] from a prior policy *sub silentio*" and "disregard[ed] rules that [were] still on the books." *Id.* at *10 (quoting *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009)). Finally, the 2013 and 2016 Rules created a "right to apply" for a provisional waiver – separate from a right to the waiver itself – that was protected under the Due Process Clause, and the government had deprived the plaintiffs of that right. *Id.* at *8.[4]

The district court also appeared to credit the plaintiffs' alternative theory of liability, premised on the government's alleged use of the provisional waiver program to target noncitizens for removal and "lure" them to USCIS offices for arrest and detention. The plaintiffs had "reasonably relied" on the provisional waiver program offered by the government, the court found, only to have their participation in that program used against them, causing them substantial harm. *Id.* at *7–8. In that way, the court reasoned, the government had violated the so-called "*Accardi* doctrine" and the Due Process Clause. *Id.* (discussing *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954), and the circumstances under which the government's failure to follow its own regulations may violate due process principles). The court noted without deciding that the same

---

[4] The district court also ruled that detaining and removing noncitizens while they were in the process of seeking provisional waivers violated the INA itself. *Sanchez*, 2024 WL 1256264, at *11–13. The plaintiffs, however, do not rely on or defend that ruling on appeal.

government conduct might also give rise to a cognizable substantive due process claim. *Id.* at \*10 n.7.  And by using noncitizens' participation in the provisional waiver program against them – taking "a rule that was promulgated for one purpose and us[ing] it for the opposite purpose" – the government had again violated the APA, engaging in "exactly the kind of arbitrary and capricious behavior the APA [was] designed to prevent[.]" *Id.* at \*10.

Accordingly, the district court granted summary judgment to the plaintiffs.  Order, *Sanchez v. McAleenan*, No. 8:19-cv-01728-GLR (D. Md. Mar. 25, 2024), ECF No. 115, J.A. 334.  As a remedy, the court issued class-wide declaratory relief and individual injunctive relief to the named noncitizen plaintiffs.  *Id.*; *see also Sanchez*, 2024 WL 1256264, at \*13–15 (addressing issues regarding relief).  Pursuant to the declaratory judgment, it was unlawful for the government to "interfer[e] with the individual [p]laintiffs' and class members' ability to avail themselves of the provisional waiver process by arrest, detention, or removal" once they had initiated that process, and to arrest or detain individual plaintiffs and class members "at [their] I-130 interviews or other interviews or appointments with USCIS[.]" J.A. 335–37.  The permanent injunction, in turn, prohibited the government from arresting, detaining, or removing the named noncitizen plaintiffs while they pursued provisional waivers.  J.A. 337–39.

This timely appeal followed.

## II.

We review an award of summary judgment *de novo*, applying the same legal standards as the district court.  *Outdoor Amusement Bus. Ass'n, Inc. v. U.S. Dep't of*

*Homeland Sec.*, 983 F.3d 671, 679 (4th Cir. 2020). The issues raised on appeal are all questions of law that we review *de novo*. *Id.*

At the outset, we clarify the relatively narrow scope of the issues before us. This case does not present a general challenge to the practice of arresting noncitizens when they appear at government facilities for immigration-related interviews. Instead, it challenges a government policy – now implemented across two presidential administrations – that allows for the detention and removal of noncitizens who are in the process of seeking provisional waivers of inadmissibility under USCIS's 2013 and 2016 Rules. And as the plaintiffs clarified at oral argument, their contention that detaining or removing noncitizens who have initiated the provisional waiver process is *per se* beyond the government's authority does not depend on where that enforcement takes place.

None of this is to minimize the importance of this case to the plaintiffs or more generally. But with the precise nature of the plaintiffs' challenge clear before us, we conclude, for the reasons given below, that the district court erred in granting summary judgment to the plaintiffs at this juncture.

### A.

We begin, as we must, with subject matter jurisdiction. On appeal, the government maintains that 8 U.S.C. § 1252(g), one of the INA's jurisdiction-stripping provisions, forecloses our review of the plaintiffs' claims. Under that provision, courts lack jurisdiction to "hear any cause or claim . . . arising from the decision . . . to commence

13

proceedings, adjudicate cases, or execute removal orders[.]"[5]  According to the government, the plaintiffs' claims fall within this provision because they challenge the enforcement of their removal orders and thus their claims "aris[e] from the decision" to "execute" those orders.

On this point, we agree with the district court.  As that court explained, the plaintiffs do not challenge "whether or how" the government may ultimately exercise its discretion to remove them.  *Sanchez*, 2024 WL 1256264, at \*6.  What the plaintiffs challenge is the government's legal authority to execute their removal orders at a particular time, during the provisional waiver process – not its discretionary decision to remove them at a time when the government unquestionably *has* that legal authority.  *Id.*  And under Supreme Court and Fourth Circuit precedent, § 1252(g) bars only the latter.

In *Reno v. American-Arab Anti-Discrimination Committee* ("*AADC*"), 525 U.S. 471 (1999), the Supreme Court adopted a narrow construction of § 1252(g), rejecting a reading that would have it cover "all or nearly all deportation claims."  *Id.* at 478.  Instead, the Court reasoned, § 1252(g) "applies only to [the] three discrete actions" it enumerates – commencement of proceedings, adjudication of cases, and execution of removal orders – which have in common their discretionary nature.  *Id.* at 482–83.  Congress made "special

---

[5] 8 U.S.C. § 1252(g), titled "Exclusive jurisdiction," provides in full:  "Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter."

provision" for judicial review of these actions, the Court explained, because they are "discretionary determinations" by the Executive, and Congress was particularly concerned about "attempts to impose judicial constraints upon prosecutorial discretion." *Id.* at 483–87, 485 n.9; *see also U.S. Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020) (reaffirming § 1252(g)'s "narrow" ambit and "reject[ing] as implausible" the suggestion that § 1252(g) "covers all claims arising from deportation proceedings" or "imposes a general jurisdictional limitation" (internal quotation marks omitted)).

We read *AADC* precisely this way in *Bowrin v. U.S. Immigration and Naturalization Service*, 194 F.3d 483 (4th Cir. 1999) (per curiam). Under *AADC*, we held, § 1252(g) does not "preclude federal court review" of challenges that "raise questions of pure law." *Id.* at 485. The Supreme Court in that case, we explained, had "helped us avoid constitutional problems by construing § 1252(g) narrowly," rejecting "the notion that [§] 1252(g) covers the universe of deportation claims." *Id.* at 488 (internal quotation marks omitted). Instead, we ruled, § 1252(g) strips federal courts of jurisdiction "only to review challenges to the Attorney General's decision to *exercise her discretion* to initiate or prosecute" the listed "stages in the deportation process," including the "execut[ion]" of a removal order. *Id.* (emphasis added).

Under this precedent, the plaintiffs' claims are not barred by § 1252(g). The plaintiffs' position is that their removal orders are currently unenforceable as a matter of law, because the plaintiffs are in the process of seeking provisional waivers. On this view, the government lacks – though only temporarily – its ordinary authority and discretion to "execute" their removal orders. So theirs is not a challenge to a discretionary prosecutorial

decision protected from certain judicial interventions by § 1252(g). Instead, it is a purely legal challenge to the Executive's authority to remove them at this time, which may proceed under § 1252(g). *See Bowrin*, 194 F.3d at 488.[6]

The government suggests that our precedent in *Bowrin* was called into question by *Mapoy v. Carroll*, 185 F.3d 224 (4th Cir. 1999), in which we held that § 1252(g), when it applies, divests a district court of its general habeas jurisdiction under 28 U.S.C. § 2241. *Id.* at 227–30. We disagree. Our focus in *Mapoy* was on the prefatory clause of § 1252(g), which specifies that § 1252(g) divests federal courts of jurisdiction "[e]xcept as provided in this section and notwithstanding any other provision of law," and our holding was that under this clause, a claim otherwise barred by § 1252(g) cannot be saved by an exercise of a district court's habeas jurisdiction. *Id.* at 229–30. As for when a claim *is* in fact barred by § 1252(g), our reasoning was entirely compatible with *Bowrin*, emphasizing that the Supreme Court in *AADC* limited § 1252(g)'s scope to "stages of the deportation process at which the Executive *has discretion* to go forward or to abandon the endeavor." *Id.* at 228 (emphasis added). And because the plaintiff in *Mapoy* – unlike the plaintiffs here – did not

---

[6] We note that this distinction between claims challenging an exercise of discretion and claims alleging a lack of legal authority has a long pedigree in Supreme Court decisions construing jurisdiction-stripping provisions, including in the immigration context. *See, e.g.*, *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) (concluding that § 1252 did not bar judicial review of the petitioners' habeas claims because they "d[id] not seek review of the Attorney General's exercise of discretion; rather, they challenge[d] the extent of the Attorney General's [legal] authority," and "the extent of that authority [was] not a matter of discretion"); *U.S. Immigr. & Naturalization Serv. v. St. Cyr*, 533 U.S. 289, 298 (2001) (similarly distinguishing between "pure question[s] of law" and challenges to "an unfavorable exercise of the Attorney General's discretion" when analyzing whether § 1252 stripped federal courts of habeas jurisdiction), *superseded by statute on other grounds as recognized in Nasrallah v. Barr*, 590 U.S. 573, 580 (2020).

16

challenge the government's legal authority to execute his removal order, *see id.* at 226–27, his claim fell within that narrow scope, *see id.* at 228.

We recognize, as the government notes, that the Third Circuit reached a different conclusion in a similar case. Like the plaintiffs here, the plaintiff in *Tazu v. Attorney General*, 975 F.3d 292 (3d Cir. 2020), after completing the first step of the provisional waiver process – filing and obtaining approval of an I-130 petition – contested the government's legal authority to execute his final removal order while he continued to pursue a provisional waiver. *Id.* at 297 ("Though the Attorney General admittedly has discretion to execute his removal order *later*, Tazu claims, he allegedly lacks the authority to exercise that discretion *now*."). The Third Circuit nevertheless held that his claim was barred by § 1252(g) as a challenge to the Executive's discretion, because "the discretion to decide *whether* to execute a removal order" necessarily includes "the discretion to decide *when* to do it." *Id.* But that is precisely the legal question in this case: whether the government's ordinary discretion to decide "when" to execute a removal order is negated, as a matter of law, while a noncitizen pursues a provisional waiver under 8 C.F.R. § 212.7(e). With respect, adopting the Third Circuit's approach would seem to conflate the jurisdictional question with the merits, assuming at the outset that the plaintiffs' reading of the provisional waiver regulations, the APA, and the Due Process Clause is incorrect.[7]

---

[7] The government also calls our attention to the Eleventh Circuit's decision in *Camarena v. Director, Immigration and Customs Enforcement*, 988 F.3d 1268 (11th Cir. 2021), rejecting claims like the plaintiffs' on jurisdictional grounds. But the Eleventh Circuit has expressly rejected the "discretion-versus-authority distinction," *id.* at 1273, that we adopted in *Bowrin*, 194 F.3d at 488.

17

In sum, the plaintiffs here are challenging the government's authority to act in the first instance, not its decision to exercise its discretion within the bounds of that authority. Those claims are therefore properly before us. Having assured ourselves of our jurisdiction, we proceed to the merits.

**B.**

On appeal, the plaintiffs press the same two theories as before the district court. We conclude, first, that the plaintiffs cannot succeed on their theory that the provisional waiver program entitles them to remain in the United States while they pursue such waivers, and that removing them during that process would violate the provisional waiver regulations, the APA, and the Due Process Clause. As we explain below, that argument is foreclosed by the regulations themselves and by intervening circuit precedent. And on the plaintiffs' alternative theory that the government violated the Due Process Clause and the APA by using the provisional waiver program to ensnare noncitizens and target them for removal, we find that the spare factual record thus far developed does not support the district court's award of summary judgment.

1.

On the plaintiffs' first theory of liability, the provisional waiver regulations operate as a kind of "shield" against removal: Once an eligible noncitizen initiates the provisional waiver process, the government lacks the legal authority to arrest, detain, or remove them until the process concludes. *See* Appellees' Brief at 27. It is undisputed that the regulations themselves, 8 C.F.R. § 212.7(e), do not expressly limit the government's authority to execute removal orders in this way. Instead, the plaintiffs rely on the regulations' purpose:

18

to allow eligible noncitizens with final removal orders to apply for waivers, and have those applications provisionally adjudicated, while they remain in the United States and avoid lengthy separations from their families. That purpose, the plaintiffs argue, is negated if noncitizens are removed from the country before their applications are decided. And it follows, they conclude, that ICE's practice of removing noncitizens without regard to their efforts to pursue provisional waivers violates the regulations. *See Sanchez*, 2024 WL 1256264, at *13 (adopting the plaintiffs' argument that the provisional waiver regulations "protect immigrants from detention and removal while they pursue provisional waivers" and that ICE's practice therefore violates the regulations).

It is true that the 2013 and 2016 Rules clearly contemplate that noncitizens like the plaintiffs will be able to remain in the United States with their families while they go through the three-step process of applying for provisional waivers. *See* 8 C.F.R. § 212.7(e)(3)(i) (including in eligibility requirements for provisional waivers that the noncitizen is "present in the United States at the time of filing the application"). As the plaintiffs argue, that is the entire point of the regulations – to relieve eligible noncitizens and their citizen spouses and families of lengthy periods of separation while USCIS adjudicates their waiver applications. *See, e.g.*, 2013 Rule, 78 Fed. Reg. at 536; 2016 Rule, 81 Fed. Reg. at 50245–46. Indeed, the government itself acknowledges that noncitizens who avail themselves of the provisional waiver process "will not be expected to leave the United States" before USCIS has decided whether to grant them provisional waivers. Appellants' Brief at 28 n.7.

19

But there is a difference between what is expected in the ordinary case and what is required in all cases. And the regulations make clear that they do not foreclose the possibility of removal during the provisional waiver process. Under 8 C.F.R. § 212.7(e)(2)(i), "[a] pending or approved provisional unlawful presence waiver does not constitute a grant of a lawful immigration status or a period of stay authorized by the Secretary." The preamble to the 2013 Rule elaborates, expressly warning that the filing of a provisional waiver application does "*not* . . . protect a[] [noncitizen] from being placed in removal proceedings or removed from the United States," "in accordance with current [Department of Homeland Security] policies . . . and the use of prosecutorial discretion." 2013 Rule, 78 Fed. Reg. at 536, 555 (emphasis in original). Put simply, at the same time the regulations granted eligibility to apply for provisional waivers from within the United States, they reserved the right of immigration officials to remove noncitizens subject to final orders of removal.

The plaintiffs respond by pointing to the fact that the warning from the preamble to the 2013 Rule was not included in the preamble to the 2016 Rule. From this omission, the plaintiffs argue, we should infer that the 2016 Rule did in fact constrain immigration officials' enforcement discretion. *See Sanchez*, 2024 WL 1256264, at *12 (adopting this position). We disagree. The operative *regulatory* language did not change when § 212.7(e) was amended by way of the 2016 Rule: Just as in 2013, when the provisional waiver process was introduced, the 2016 version of § 212.7(e) made clear that a "pending" application for a provisional waiver did not operate as a "stay" of removal. *See* 2016 Rule, 81 Fed. Reg. at 50275; 8 C.F.R. § 212.7(e)(2)(i) (2017). And the agency had clarified once

20

already, in the preamble to the 2013 Rule, that this language meant exactly what it said. The logical inference from the omission of a duplicate clarification in 2016 is that the agency was maintaining its original position – not that it was *sub silentio* adopting a new and counter-textual reading of the same regulatory language.

In short, we disagree with the plaintiffs that the provisional waiver regulations can be read to bar arrest, detention, and removal once an eligible noncitizen has engaged the application process. It follows that the government did not violate those regulations by arresting and threatening to remove the noncitizen plaintiffs despite their efforts to seek provisional waivers. Nor can the plaintiffs succeed on their related APA claim, which rests on the same erroneous interpretation of the provisional waiver regulations. As the plaintiffs see it, the 2013 and 2016 Rules announced a policy of non-enforcement during the provisional waiver process, from which the agency departed arbitrarily and capriciously, without providing any rationale. As explained above, however, the 2013 and 2016 Rules did not adopt the policy hypothesized by the plaintiffs, and there was no change in course that would have required a "reasoned explanation." *Casa De Maryland v. U.S. Dep't of Homeland Sec.*, 924 F.3d 684, 703 (4th Cir. 2019).

That leaves the plaintiffs' procedural due process claim. To establish a liberty or property interest giving rise to procedural due process protection, the plaintiffs must show an "entitlement to the benefit as directed by statute." *Smith v. Ashcroft*, 295 F.3d 425, 429 (4th Cir. 2002) (emphasis omitted). Where the relief sought is discretionary, no protected interest exists. *Id.* at 430. Here, it is undisputed that the decision to grant or deny a provisional waiver is committed to USCIS's discretion. *See* 8 U.S.C. § 1182(a)(9)(B)(v);

21

8 C.F.R. § 212.7(e)(2)(i).  But that does not defeat their claim, the plaintiffs argue, because they still have a right to *access* the provisional waiver process, without government interference – in the form of detention or removal – while that process is ongoing.  The district court agreed, finding that the regulations created "a right to apply for a provisional waiver" distinct from "a right to the [waiver] itself."  *Sanchez*, 2024 WL 1256264, at *8.

For the reasons already given, the plaintiffs' premise – that the 2013 and 2016 Rules guaranteed a right to seek a provisional waiver without "interference" by way of detention or removal – is flawed.  But there is a second and more fundamental problem with this claim:  Three months after the district court entered summary judgment, our court held that USCIS has no legal obligation under the INA or its implementing regulations to adjudicate provisional waiver applications at all.  *Lovo*, 107 F.4th at 210–16.  Whether to pass on a provisional waiver application, we explained, is a decision "committed to agency discretion by law" and therefore unreviewable under the APA.  *Id.* at 210–11 (quoting 5 U.S.C. § 701(a)(2)).  As we read *Lovo*, it can no longer be said that the plaintiffs have a protected interest in access to the provisional waiver process; USCIS is under no more obligation to *consider* their applications than it is to *approve* them.  At oral argument, the plaintiffs did not defend this part of the district court's decision in light of *Lovo*, and we do not believe that it can be sustained under that intervening precedent.  Accordingly, we cannot affirm the district court's award of summary judgment on the "shield" theory.

## 2.

We turn now to the plaintiffs' alternative theory:  Even if the provisional waiver regulations do not operate as a "shield" against removal, the plaintiffs argue, the

22

government still may not wield those regulations as a "sword," by using the provisional waiver program to target noncitizens and "lure" them to USCIS offices for apprehension and then removal.  Whether or not the government can remove noncitizens *despite* their engagement of the provisional waiver process, in other words, it may not remove them *because* they have engaged that process.  The district court agreed, reasoning that such conduct would run afoul of the APA as well as the Due Process Clause, under the *Accardi* doctrine, and might also violate substantive due process principles.  *Sanchez*, 2024 WL 1256264, at *7–8, *10 n.7.

The government's response to this set of allegations is factual, not legal.  The government does not defend a right to use the provisional waiver process as a "sword" in the way described by the plaintiffs, as a means of identifying noncitizens for removal and facilitating their apprehension.  Instead, it contends that the limited record in this case – compiled with no fact discovery – cannot support a finding that the government is actually using the "I-130 interview as a trap to lure provisional waiver applicants to their arrest." *Id.* at *11.

We agree.  All we know from the plaintiffs is that certain noncitizens with final orders of removal who appeared for their I-130 interviews were arrested and detained by ICE.  The I-130 interview, recall, is only the first step of the provisional waiver process, coming before the filing of an I-601A application for a provisional waiver.  We may be able to presume from the regulatory structure that most noncitizens who are married to United States citizens and are seeking to adjust their status on that basis will eventually apply for provisional waivers, to avoid prolonged separations from their spouses, and that

immigration officials know or should know this. But even so, the fact that some noncitizens were arrested at the conclusion of their I-130 interviews does not show that these arrests were motivated or facilitated by the noncitizens' presumptive interest in pursuing provisional waivers. Without more, it is equally plausible that the government first decided to execute the plaintiffs' removal orders, and only then determined that the plaintiffs could be located and safely apprehended at a USCIS facility where they were due for appointments – without ever considering whether the plaintiffs might be in the early stages of a process that would later culminate with the filing of Form I-601A.

Because there was no discovery in this case, we have no other information from the government defendants that might fill this gap. The government has admitted only that ICE has a practice of "arresting, detaining, and seeking removal of [noncitizens] with final orders of removal at USCIS offices on a case-by-case basis," J.A. 72 – an admission that makes no reference to the provisional waiver process and does not advance the plaintiffs' theory that the government is leveraging that process against them.

We appreciate that the plaintiffs' lives have been greatly disrupted, and perhaps irreparably altered, by the government's actions in this case. At this stage of the litigation, however, there is simply not enough evidence to support their allegation that immigration officials are holding out the provisional waiver program as "bait" in order to identify noncitizens for removal or facilitate their removal. For that reason, we vacate the district

24

court's grant of summary judgment to the plaintiffs on this theory and remand for further proceedings consistent with this opinion.[8]

## III.

For the foregoing reasons, we vacate the district court's judgment and remand for further proceedings consistent with this opinion.

*VACATED AND REMANDED*

---

[8] We do not address whether and to what extent the conduct alleged by the plaintiffs, if proven, would violate the law – a question the government, relying on the lack of evidentiary support, has not fully briefed.  And in light of our decision to vacate the district court's judgment, we do not address the government's objections to the scope of the relief granted by the district court.